UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COLONY INSURANCE COMPANY,

                 Plaintiff,

     -against-

HUDSON INSURANCE COMPANY and
UNITED SPECIALTY INSURANCE
COMPANY,

               Defendants.

24-CV-236 (JGLC)

**<u>OPINION AND ORDER</u>**

JESSICA G. L. CLARKE, United States District Judge:

While working construction in Brooklyn, Angie Lisbeth Garzon fell as she ascended a temporary staircase. She sued several entities in a separate action. Now, three insurance companies, who insure the defendants in that case, argue over who must pay for the defense of that action and who may have to pay her damages. Colony Insurance Company insured SH Kingsland LLC, the owners of the construction project, at the time of Garzon's accident. Hudson Insurance Company insured Innovative Construction NYC, LLC, the general contractor. And United Specialty Insurance Company insured Sandstone Structures LLC, a sub-contractor. Garzon, meanwhile, says that she was employed by a sub-sub-contractor, Y&C Masonry LLC, when she was injured after the temporary staircase shifted or buckled beneath her feet.

All three insurance companies now move, in whole or in part, for summary judgment. For the reasons stated below, the Court grants these motions in part and denies them in part. The Court concludes that Hudson Insurance Company and United Specialty Insurance Company owe a primary and non-contributory duty to defend SH Kingsland LLC in the Garzon lawsuit, and that each must contribute equally to that defense. The Court finds that United Specialty Insurance Company has a duty to defend Innovative Construction NYC, LLC, the general contractor. And

the Court finds that the parties' outstanding questions about their respective duties to indemnify any of the insureds is premature at this stage of the litigation.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 Statements and accompanying exhibits. Unless otherwise indicated, the Court only cites a 56.1 statement where (1) the parties have agreed the factual assertion is undisputed; and (2) the factual assertion is properly supported by a citation to the record. These citations include instances where a party does not truly "dispute" an assertion, but merely seeks to qualify or add their own "spin" to it. *See Kaye v. N.Y.C. Health and Hosps. Corp.*, No. 18-CV-12137 (JPC), 2023 WL 2745556, at *2 n.2 (S.D.N.Y. Mar. 31, 2023). The Court also relies on exhibits filed by the parties in connection with the instant motions, and any relevant pleadings in this case. *Id.*

On July 29, 2022, Angie Lisbeth Garzon ("Garzon") filed a lawsuit in Kings County Supreme Court seeking to recover for injuries she alleges she sustained while working on a construction project (the "Project") earlier that month. ECF No. 72, Joint Statement of Material Facts ("JSMF")[1] ¶¶ 16, 17. According to Garzon's Complaint, she was working at 131 Kingsland Avenue, Brooklyn, New York 11222 (the "Premises") on July 7, 2022, when she fell carrying objects up a temporary staircase (the "Accident"). *Id.* ¶ 18; ECF No. 72-4 ("Garzon Compl.")

---

[1] This joint Rule 56.1 Statement reflects only the positions of Plaintiff Colony Insurance Company and Defendant United Specialty Insurance Company. *See* JSMF at 1 n.1. Defendant Hudson Insurance Company, in contravention of the Court's Individual Rules, failed to reach an agreement with the other two parties on a Joint Statement of Material Facts. *See* Ind. Rule 4(f)(ii) (requiring the parties to "negotiate and submit, prior to or along with the movant's Rule 56.1 Statement, a joint Rule 56.1 Statement setting out all facts on which the parties agree."). Instead, Hudson Insurance Company filed two separate 56.1 Statements: one supporting its summary judgment motion against Colony Insurance Company, ECF No. 71 ("Hudson SMF-Colony"), and another supporting its summary judgment motion against United Specialty Insurance Company, ECF No. 80 ("Hudson SMF-USIC").

(from *Garzon v. SH Kingsland, LLC*, Index No. 521818/2022 (the "Garzon Action")) ¶ 82. The temporary staircase "shifted, buckled, wobbled and/or otherwise moved under her feet." Garzon Compl. ¶ 82. Garzon alleges that she then "tripped and fell as a result of a dangerous condition; specifically, a tripping hazard condition, which consisted of [] construction debris." *Id.* ¶ 78; JSMF ¶ 19.

Garzon explains that, at the time of her Accident, she worked for a company called Y&C Masonry LLC ("Y&C"). ECF No. 72-5 ("Garzon Supp. Bill of Particulars") ¶ 10; *see* JSMF ¶ 24. Y&C had been hired by another company, Sandstone Structures LLC ("Sandstone"), to work on the Project. JSMF ¶ 36. Sandstone, meanwhile, had been hired by another company, Innovative Construction NYC, LLC ("Innovative"). *Id.* ¶ 34. And Innovative had been hired by the owners of the Project, SH Kingsland LLC ("Kingsland"), to serve as the Project's general contractor. *Id.* ¶ 32. In other words, Kingsland hired Innovative as its general contractor. *Id.* Innovative hired Sandstone. *Id.* ¶ 34. And Sandstone hired Y&C, who hired Garzon. *Id.* ¶¶ 24, 36.

**The Contracts**

Each of these companies entered into separate contracts with one another to govern the scope of their working relationships and to ensure that they were covered by insurance in the event of an accident. As relevant here, the Kingsland-Innovative contract (the "Innovative Contract") "required Innovative to maintain general liability insurance including Kingsland as an additional insured on a primary and non-contributory basis." *Id.* ¶ 33; *see* ECF No. 72-10. And the Innovative-Sandstone contract (the "Sandstone Contract") "required Sandstone to maintain commercial general liability insurance including Kingsland and Innovative as additional insureds on a primary, non-contributory basis." JSMF ¶ 35; *see* ECF No. 72-11.

Each company also sought out its own insurance coverage. Kingsland purchased coverage from Colony Insurance Company ("Colony"). JSMF ¶ 1; *see* ECF No. 72-1. Colony issued Kingsland a commercial general liability policy, which provided coverage from December 3, 2021, to December 3, 2023 (the "Colony Policy"). *Id.* The Colony Policy provided the insureds primary coverage, but that coverage was "excess over '[a]ny other primary insurance available to [Kingsland] covering liability for damages arising out of the premises or operations . . . for which [Kingsland] has been added as an additional insured.'" JSMF ¶ 2 (quoting ECF No. 72-1 at CIC002l § 4(b)(l)(b)).

Innovative bought insurance from Hudson Excess Insurance Company, also known as Hudson Insurance Company ("Hudson"). JSMF ¶ 3; *see, e.g.*, ECF No. 96 ("Hudson Reply") at 2 ("Hudson Excess Insurance Company . . . s/h/a Hudson Insurance Company"). Hudson issued Innovative a general liability policy running from October 19, 2021, to October 19, 2022 (the "Hudson Policy"). JSMF ¶ 3; Hudson SMF-Colony ¶ 14; *see* ECF No. 72-2 (the Hudson Policy).

The Hudson Policy expressly set out whom the policy covered. *See* JSMF ¶ 5; Hudson SMF-Colony ¶ 16. In an endorsement entitled "Additional Insured – Owners, Lessees Or Contractors – Automatic Status For Other Parties When Required In Written Construction Agreement" (the "Hudson AI Endorsement"), Innovative and Hudson amended the Policy's "Who Is An Insured" section and spelled out that the Policy, as amended, would insure:

1. Any person or organization for whom [Innovative is] performing operations when [Innovative] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on [Innovative's] policy; and

2. Any other person or organization [Innovative is] required to add as an additional insured under the contract or agreement described in Paragraph 1. above.

> Such persons(s) or organization(s) is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> > a. [Innovative's] acts or omissions; or
> > b. The acts or omissions of those acting on [Innovative's] behalf;
>
> in the performance of [Innovative's] ongoing operations for the additional insured.

ECF No. 72-2 at HUD 0039; *see* Hudson SMF-Colony ¶ 16. The Hudson Policy continues that it covers a "bodily injury" only if the injury is "caused by an 'occurrence' that takes place in the 'coverage territory'" during the policy period. ECF No. 72-2 at HUD 0042.

Notably, the Hudson Policy is clear that it provides liability coverage to any additional insured "[w]here [Innovative is] specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by [Innovative] before any 'occurrence' or offense." JSMF ¶ 6 (quoting ECF No. 72-2 at HUD 0064). In that instance, and to the extent required by that written contract, the Hudson Policy provides that it "will be primary and the other insurance will not contribute . . . ." ECF No. 72-2 at HUD 0064.

The Hudson Policy also delineates its duties vis-à-vis other insurance policies in further detail. The Hudson Policy is excess over "[a]ny other primary insurance available to [Innovative] covering liability for damages arising out of the premises or operations . . . for which [Innovative has] been added as an additional insured by attachment of an endorsement." JSMF ¶ 7 (quoting ECF No. 72-2 at HUD 0021); *see also* Hudson SMF-USIC ¶ 28. Where the Hudson Policy is primary, Hudson's "obligations are not affected unless any of the other insurance is also primary. Then [Hudson] will share with all that other insurance." JSMF ¶ 8 (quoting ECF No. 72-2 at HUD 0021); *see also* Hudson SMF-USIC ¶ 28. And where the Hudson Policy and another

5

insurance policy both "permit[] contribution by equal shares, [Hudson] will follow this method." JSMF ¶ 9 (quoting ECF No. 72-2 at HUD 0022).

Sandstone, meanwhile, acquired insurance coverage from United Specialty Insurance Company ("USIC"). JSMF ¶ 10. USIC issued Sandstone a general liability policy running from April 20, 2022, to April 20, 2023 (the "USIC Policy"). *Id.*; Hudson SMF-USIC ¶ 21; *see* ECF No. 72-3 (the USIC Policy). The USIC Policy requires that USIC defend its insureds against "a lawsuit seeking damages for bodily injury, provided that the bodily injury was caused by an 'occurrence' and the bodily injury occurred during the policy period of the USIC Policy." JSMF ¶ 11; ECF No. 72-3 at USIC 000006; *see also* Hudson SMF-USIC ¶ 22.

Like the Hudson Policy, the USIC Policy expressly expands its coverage through an endorsement (the "USIC AI Endorsement"), which provides that the Policy "shall include as additional Insureds any person or organization to whom [Sandstone] has agreed by written and executed contract to provide coverage, but only with respect to operations performed by or on behalf of [Sandstone] and only with respect to occurrences subsequent to the execution of such contract." ECF No. 72-3 at USIC 000042; JSMF ¶ 12; Hudson SMF-USIC ¶ 23.

The USIC Policy also makes its duties clear vis-à-vis other insurance policies. "Where required by written contract," it explains, the USIC Policy is

> . . . primary to any insurance carried by an additional insured, and any insurance carried by such additional insured shall not be called upon to contribute to any claim covered under this policy, provided that the claim arises directly from work performed by [Sandstone] or others working directly on behalf of [Sandstone] and provided further that the "occurrence" that gives rise to such claim happened subsequent to the execution of the written contract.

Hudson SMF-USIC ¶ 24; ECF No. 72-3 at USIC 000064; JSMF ¶ 13.

6

Like the Hudson Policy, where the USIC Policy is primary, USIC's "obligations are not affected unless any of the other insurance is also primary. Then [USIC] will share with all that other insurance." JSMF ¶ 14 (quoting ECF No. 72-3 at USIC 00016). And, again like the Hudson Policy, where the USIC Policy and another insurance policy both "permit[] contribution by equal shares," USIC is bound to "follow this method." JSMF ¶ 15 (quoting ECF No. 72-3 at USIC 00017).

**The Garzon Action**

After her Accident, Garzon sued Kingsland, the Project owner, and Innovative, the general contractor. Garzon Compl. at 1. She alleges, *inter alia*, that on the date of her Accident both defendants performed, supervised, directed, and controlled "construction, renovation, demolition, excavation, erection, repairing, alteration, painting, cleaning, pointing, labor and/or services" upon the Premises; and directed and controlled work, repairs, alterations, and renovations at the Premises. *Id.* ¶¶ 39–50, ¶¶ 59–70; *see also* JSMF ¶ 20.

She also alleges that both defendants and their "employees, servants and/or agents were engaged in performing work, labor and/or services" upon the Premises; and, more specifically, that they "perform[ed] cleaning, construction, renovation, demolition, excavation, erection, repairing, alteration, painting, pointing, labor and/or services" there. Garzon Compl. ¶¶ 51, 58, 71, 73; *see also* JSMF ¶ 21. She alleges that Kingsland, as well as "its employees, servants and/or agents[,] had the duty to provide workers lawfully at the subject work site, including [her], with a safe place to work"; and that Kingsland, along with "its[] employees, servants and/or agents[,] had the non-delegable duty to see that the work site . . . was kept reasonably safe and free of dangers and hazards to those workers." Garzon Compl. ¶¶ 54, 56; *see also* JSMF ¶ 22. She also alleges that both Kingsland and Innovative, as well as their "employees, servants

7

and/or agents[,] had the duty to provide proper and safe equipment to workers lawfully at the subject work site," including her. Garzon Compl. ¶¶ 57, 72.

Finally, Garzon alleges that her fall and her resulting injuries were "caused solely and wholly" by the negligence of Kingsland, Innovative, and their "agents, servants and/or employees." *Id.* ¶¶ 85, 86; *see id.* ¶ 79; JSMF ¶ 23.

In response, Kingsland filed an Answer and asserted crossclaims against Innovative— alleging that any damages Garzon suffered were caused entirely by Innovative's primary negligence. JSMF ¶ 25; ECF No. 72-6 ¶ 38. Kingsland also brought a third-party action against Sandstone, alleging that Sandstone was hired by Innovative to perform construction work on the site as a subcontractor, that Garzon was an employee of Sandstone, and that "any damages Garzon suffered resulted entirely from Sandstone's negligence, carelessness, recklessness, and culpable conduct." JSMF ¶¶ 26, 27; ECF No. 72-7.

Innovative, too, brought a third-party action against Sandstone alleging that any damages Garzon suffered were caused by Sandstone's negligent acts or omissions, or those of its subcontractors and/or employees. JSMF ¶ 28; ECF No. 72-8. Innovative initiated a third-party action against Y&C, as well. JSMF ¶ 29; ECF No. 72-9. There, Innovative alleged that any damages Garzon suffered were caused by Y&C's negligent acts or omissions, or those of its subcontractors and/or employees. *Id.* It also alleged that Y&C entered into a contract with Innovative to do construction work on the Project; that, pursuant to that contract, Y&C agreed to defend, indemnify, and hold harmless Innovative for claims and suits arising out of or connected to the work performed by Y&C on the Project; and that Garzon's alleged accident and injuries arose out of the work Y&C contracted to perform there. *Id.*

8

**The Present Action**

On January 11, 2024, Colony (Kingsland's insurer) sued Hudson (Innovative's insurer) and USIC (Sandstone's insurer), seeking a declaratory judgment that Hudson and USIC owe a duty to defend and indemnify Kingsland in the Garzon Action. *See* ECF No. 1 at 14. On March 22, 2024, Hudson answered Colony's complaint and asserted crossclaims against USIC seeking, *inter alia*, a declaration that USIC owes a duty to defend and indemnify Innovative in the Garzon Action. *See* ECF No. 24 ¶¶ 118–36. On April 10, 2024, USIC answered Colony's complaint and Hudson's crossclaims. ECF Nos. 32, 33.

After the parties engaged in settlement discussions before Judge Henry J. Ricardo but failed to reach a settlement, *see* ECF No. 64, they each brought motions for summary judgment. ECF No. 68, Colony Mot. for Partial Summary Judgment; ECF No. 70, Hudson Mot. for Summary Judgment Against Colony; ECF No. 74, USIC Mot. for Summary Judgment; ECF No. 79, Hudson Mot. for Partial Summary Judgment Against USIC. These motions are presently before the Court.

Colony now argues that Hudson and USIC owe a primary and non-contributory duty to defend Kingsland against the Garzon Action, and that Hudson and USIC must reimburse Colony for the costs it has incurred to defend Kingsland in that Action. ECF No. 76 ("Colony MSJ"). Hudson argues, first, that it has no duty to defend or indemnify Kingsland in the Garzon Action. ECF No. 78 ("Hudson MSJ-Colony"). Then, it contends that USIC owes a primary and non-contributory duty to defend Innovative; and that, should the Court find that Hudson has a duty to defend Kingsland in the Garzon Action, USIC owes at least a fifty percent concurrent duty to defend Kingsland, as well. ECF No. 82 ("Hudson MSJ-USIC"); *see also* Hudson MSJ-Colony at 4. Hudson also seeks costs from USIC for the expenses it has incurred in the Garzon Action and

9

in the third-party actions. Hudson MSJ-USIC at 25. Finally, USIC concedes that it has a duty to defend both Kingsland and Innovative. ECF No. 75 ("USIC MSJ") at 3. However, USIC maintains that it and Hudson have a "co-equal duty" to defend Kingsland in the Garzon Action, and insists that the Court cannot issue a declaratory judgment that USIC owes a duty to indemnify either Kingsland or Innovative. USIC MSJ.

## LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating the absence of a question of material fact. *Celotex Corp.*, 477 U.S. at 22. If the movant meets its initial burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal citation and quotation marks omitted).

When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing "particular parts of materials in the record" to survive the summary judgment motion. Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "Only disputes over facts that might affect the outcome of the suit under the governing law" preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are genuine issues of material fact, a court is "required to resolve all ambiguities and draw all permissible factual

10

inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). "The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kee v. City of New York*, 12 F.4th 150, 166–67 (2d Cir. 2021) (internal quotation marks and citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021) (internal quotation marks and citation omitted).

## DISCUSSION

The discussion below proceeds in five parts. First, the Court examines whether Hudson and/or USIC owe a duty to defend Kingsland in the Garzon Action, and concludes that they both do. Second, the Court assesses which policy, if any, has priority, and finds that Hudson and USIC's duties to Kingsland are both primary and non-contributory, and that each insurer must contribute equally to Kingsland's defense. Third, the Court notes that USIC acknowledges that it owes a duty to defend Innovative in the Garzon Action on a primary and non-contributory basis. Fourth, the Court denies as premature those parts of USIC's and Hudson's motions that address the duty to indemnify—because neither Colony nor Hudson seek a declaratory judgment at this stage about the duty to indemnify. And finally, the Court directs the parties to meet and confer to see if they can reach an agreement as to costs consistent with this Opinion.

## I.      Hudson and USIC Owe a Duty to Defend Kingsland in the Garzon Action

"Insurance policies are, in essence, creatures of contract, and, accordingly, subject to principles of contract interpretation." *Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester*

11

*Ins. Co.*, 685 F. Supp. 3d 187, 200 (S.D.N.Y. 2023) (quoting *Porco v. Lexington Ins. Co.*, 679 F. Supp. 2d 432, 435 (S.D.N.Y. 2009)). "Under New York law, the interpretation of a contract 'is a matter of law for the court to decide.'" *622 Third Ave. Co. v. Nat'l Fire Ins. Co. of Hartford*, 646 F. Supp. 3d 466, 475 (S.D.N.Y. 2022) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002)).

"As with the construction of contracts generally," then, "unambiguous provisions of an insurance contract must be given their plain and ordinary meaning." *Travelers*, 685 F. Supp. 3d at 200 (quoting *Gilbane Bldg. Co./TDX Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 31 N.Y.3d 131, 135 (2018)). "When contract language is unambiguous, 'the district court [may] construe it as a matter of law and grant summary judgment accordingly.'" *Ohio Sec. Ins. Co. v. Accident Fund Ins. Co. of Am.*, No. 25-CV-3948 (PAE), 2026 WL 32849, at *7 (S.D.N.Y. Jan. 6, 2026) (quoting *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006)).

These core principles apply when a Court evaluates an insurer's duties to defend and indemnify. *See id.* at *11–12. "The duties to defend and indemnify are separate and distinct." *Travelers*, 685 F. Supp. 3d at 200 (quoting *Barney Greengrass, Inc. v. Lumbermens Mut. Cas. Co.*, 445 F. App'x 411, 413 (2d Cir. 2011) (summary order)). Under New York law, "the duty of an insurer to defend its insured is 'exceedingly broad' and far more expansive than the duty to indemnify its insured." *High Point Design, LLC v. LM Ins. Corp.*, 911 F.3d 89, 94–95 (2d Cir. 2018) (quoting *Cont'l Cas. Co. v. Rapid-Am. Corp.,* 80 N.Y.2d 640, 648 (1993)); *accord Regal Constr. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 15 N.Y.3d 34, 37 (2010).

"[T]he insurer's duty to provide a defense is invoked 'whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer, regardless of how false or groundless those allegations might be.'" *622 Third Ave. Co., L.L.C.*,

12

646 F. Supp. 3d at 475 (quoting *High Point Design, LLC*, 911 F.3d at 95). "Thus, 'the general rule in determining whether an insurer has a duty to defend is to compare the allegations of the complaint with the operative insurance policy.'" *Travelers*, 685 F. Supp. 3d at 200 (quoting *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 148 (2d Cir. 2004)).

"[A]n insurer may be required to defend under the contract even though it may not be required to pay once the litigation has run its course." *Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323 (S.D.N.Y. 2020) (quoting *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 140 (2d Cir. 2014)). "If, liberally construed, the claim is within the embrace of the policy, the insurer *must* come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Ohio Sec. Ins. Co.*, 2026 WL 32849, at *8 (emphasis added) (quoting *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006)). "Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." *Id.* (cleaned up).

Here, the Court must determine whether Hudson and/or USIC owe a duty to defend Kingsland in the Garzon Action. The parties do not dispute that the Innovative and Sandstone Contracts are written contracts as contemplated by the Hudson AI Endorsement, or that the Garzon Accident qualifies as a "bodily injury" caused by an "occurrence" that took place within the "coverage territory" during the relevant policy periods. Hudson SMF-Colony ¶ 16; ECF No. 72-2 at HUD 0042. USIC also concedes that it must defend Kingsland in the Garzon Action. *See* USIC MSJ at 6. But Hudson sees it differently: it argues that it owes no duty to defend Kingsland in the Garzon Action. Hudson, however, is mistaken.

First, the Hudson Policy is clear that it covers additional insureds when a "bodily injury" is "caused in whole or in part" not just by Innovative's own acts and omissions, but by the "acts

13

or omissions of those acting on [Innovative's] behalf." Hudson AI Endorsement § 2; Hudson SMF-Colony ¶ 16; ECF No. 72-2 at HUD 0039. Hudson's arguments that it owes Kingsland no duty because Innovative did not hire or employ Garzon; did not hire Y&C; and did not build the temporary staircase where Garzon was allegedly injured are therefore unavailing. *See* ECF No. 89-22 ("Hudson Opp.") at 12–13.

Hudson stresses that "when an insurance policy extends coverage to additional insureds only for injuries 'caused in whole or in part, by the acts or omissions of the named insured, the coverage applies to injury proximately caused by the named insured.'" Hudson Opp. at 12–13 (quoting *Burlington lns. Co. v. N.Y.C. Transit Auth.*, 29 N.Y.3d 313, 317 (2017)) (cleaned up). But that is not the situation in this case: the Hudson Policy extends coverage to Kingsland for injuries "caused in whole or in part" by Innovative's own acts and omissions *and* by the acts and omissions of Innovative's subcontractors, who were "acting on Innovative's behalf." *See* Hudson AI Endorsement § 2. Even if "Innovative delegated all the work to Sandstone," and Sandstone then "ceded [it] to Y&C," as Hudson alleges, Innovative—the general contractor—would remain responsible for that work; Sandstone and Y&C would have been acting on Innovative's behalf, triggering the Hudson Policy. Hudson Opp. at 3.

Indeed, in one of its own motions for summary judgment, Hudson argues that "Sandstone was an agent, servant and/or subcontractor of Innovative and performed work for Innovative at the Project." Hudson MSJ-USIC at 20. Moreover, Hudson proclaims, it "is axiomatic that injuries to a subcontractor's employee which occur in the course of employment arise out of the prime contractor's work." *Id.* at 21.

Under the unambiguous, plain and ordinary meaning of the Hudson Policy, then, Hudson—as Innovative's insurer—owes a duty to defend Kingsland whether Garzon's alleged

14

injuries were caused by Innovative's acts or omissions, or by Sandstone or Y&C's. *Travelers*, 685 F. Supp. 3d at 200.

Second, Hudson fails to convince the Court that the Garzon Complaint is so "opaque," "tortured and unreasonable," Hudson Opp. at 13, 14 (internal citations omitted), that Garzon's allegations do not "fall within the scope of the risks undertaken by [Hudson], regardless of how false or groundless those allegations might be.'" *622 Third Ave. Co.*, 646 F. Supp. 3d at 475 (internal quotation marks and citation omitted). Hudson repeatedly urges the Court to "peel back the allegations" to assess whether Innovative "was actually a proximate cause of the accident as alleged." Hudson MSJ-Colony at 3 (quoting *LM Ins. Corp. v. Fed. Ins. Co.*, 585 F. Supp. 3d 493, 501 (S.D.N.Y. 2022)).

But when the Court peels back Garzon's allegations, it reveals a series of claims that, liberally construed, fall "within the embrace of the [Hudson] policy"—meaning Hudson "must come forward to defend its insured no matter how groundless, false or baseless the suit may be." *Ohio Sec. Ins. Co.*, 2026 WL 32849, at *8 (quoting *Auto. Ins. Co. of Hartford*, 7 N.Y.3d at 137)); *see id.* ("Any doubt as to whether the allegations state a claim within the coverage of the policy must be resolved in favor of the insured and against the carrier." (internal quotation marks and citation omitted)).

In her Complaint, Garzon alleges that both Kingsland and Innovative performed, supervised, directed, and controlled "construction, renovation, demolition, excavation, erection, repairing, alteration, painting, cleaning, pointing, labor and/or services" upon the Premises on the day of her Accident. Garzon Compl. ¶¶ 39–50; *see also* JSMF ¶ 20. She alleges that both Kingsland and Innovative "had the duty to provide proper and safe equipment to workers lawfully at the subject work site," including Garzon. Garzon Compl. ¶¶ 57, 72. She alleges that

15

Kingsland, as well as its "employees, servants and/or agents"—Innovative among them—had both "the duty to provide workers lawfully at the subject work site, including [her], with a safe place to work" and "the non-delegable duty to see that the work site . . . was kept reasonably safe and free of dangers and hazards to those workers[.]" *Id.* ¶¶ 54, 56; *see also* JSMF ¶ 22. And she alleges that her fall and resulting injuries were "caused solely and wholly" by the negligence of Kingsland, Innovative, and their "agents, servants and/or employees." Garzon Compl. ¶¶ 85, 86; *see id.* ¶ 79; JSMF ¶ 23.

Hudson points to a handful of cases to argue that "as a matter of law, there is no possible factual or legal basis on which it might eventually be obligated to indemnify the insured," and that it therefore owes no duty to defend Kingsland. Hudson MSF-Colony at 3 (quoting *Kookmin Best Ins. Co., Ltd. v. Foremost Ins. Co.*, No. 18-CV-782 (PAE), 2019 WL1059973 at *5 (S.D.N.Y Mar. 5, 2019)); *see* ECF No. 89-22 ("Hudson Opp.") at 3, 12 (quoting the same). *See also* Hudson MSJ-Colony at 17–19 (citing *LM Ins. Corp.*, 585 F. Supp. 3d at 501; *Ohio Sec. Ins. Co. v. Travelers Indem. Co. of Conn.*, No. 19-CV-1355 (AJN), 2021 WL 797670 (S.D.N.Y. Mar. 1, 2021); *Hanover Ins. Co. v. Philadelphia Indem. Ins. Co.*, 73 N.Y.S.3d 549 (1st Dep't 2018); and *Pioneer Cent. Sch. Dist. v. Preferred Mut. Ins. Co.*, 86 N.Y.S.3d 364 (4th Dep't 2018)); ECF No. 94 at 3–4, 6. But none of these cases are applicable; in all of them, unlike in this case, the court had ample reason to conclude that the insured was not actually a proximate cause of the injuries as alleged in the pleadings. *See* Hudson MSJ-Colony at 3.

For example, in *Pioneer*, Pioneer Central School District and Pioneer Middle School (collectively, "Pioneer") entered into a contract with a janitorial service called Kleanerz. *Pioneer Cent. Sch. Dist.*, 86 N.Y.S.3d at 365. After a Kleanerz employee alleged that she was injured when she slipped on snow or ice in the school's parking lot and sued Pioneer (and not Kleanerz),

16

Pioneer brought an action seeking a declaration that Kleanerz's insurance company had a duty to defend the school and school board against the Kleanerz employee's claims. *Id.* at 365–66. But the court found that it was "undisputed that Kleanerz was not responsible for clearing ice and snow from the parking lot," so ruled against Pioneer. *Id.* at 366; *see also LM Ins. Corp.*, 585 F. Supp. 3d at 500–01 (relying on *Pioneer* as an "analogous" case).

*Hanover* featured almost identical circumstances. There, a security guard employed by a security company called Protection Plus "allege[d] that he slipped and fell on a recently mopped floor while working at [a] Manhattan School." *Hanover Ins. Co.*, 73 N.Y.S.3d at 550. As in *Pioneer*, the court found that "the acts or omissions of Protection Plus were not a proximate cause of the security guard's injury," and thus concluded that the Manhattan School could not claim coverage under Protection Plus's insurance. *Id.*

Similarly, in *Ohio Security*, an HVAC installer working for a subcontractor named Airforce alleged that he was injured after tripping at his worksite. 2021 WL 797670, at *1. He sued the property owners, construction manager, and others responsible for "maintaining, controlling, and supervising the premises and construction work being done there" but not Airforce, the HVAC company. *Id.* (cleaned up). After multiple insurance companies investigated the accident, they concluded that the worker tripped on a piece of plywood or temporary floor covering. *Id.* at *2. The parties agreed that the worker's direct employer, Airforce, "would have nothing to do with the placement or maintenance of temporary floor coverings." *Id.* at *5. And the court found "no genuine dispute" as to the fact that Airforce "did not own, manage, maintain, control, or supervise the premises." *Id.* at *4.

Still, the insurance company representing the owners, construction manager, and other first-party defendants alleged that Airforce's insurer had a duty to defend them. *Id.* at *1. The

court ruled otherwise. *Id.* at *6. Airforce's insurance policy only covered claims that were "the result of acts or omissions of the named insured [Airforce]," and the court found that there was no "reasonable possibility that Airforce's acts or omissions proximately caused [the worker's] injuries." *Id.* at *2, *5. Therefore, the court concluded, Airforce's insurer owed no duty to defend the owners' insurance company. *Id.* at *6.

This case is entirely distinguishable from those discussed above. Here, Garzon specifically alleges that Innovative's negligence was a proximate cause of her injuries—unlike the undisputed facts in the other cases. Garzon Compl. ¶¶ 85, 86. Garzon specifically alleges that Innovative maintained, controlled, and supervised the Premises on the day she was injured. Garzon Compl. ¶¶ 39–50. Garzon specifically points to Innovative's duty to provide her with proper and safe equipment. Garzon Compl. ¶¶ 57, 72. And Hudson, for its part, presents no countervailing facts to show that Innovative did not build the temporary staircase where Garzon allegedly fell, or that Innovative was not responsible for overseeing the worksite where Garzon was allegedly injured. *See generally* Hudson MSJ-Colony. The Court is also not aware of any further investigations into the circumstances surrounding Garzon's Accident. *Cf. Ohio Sec. Ins. Co.*, 2021 WL 797670, at *2. "Thus, the facts pled in the complaint raise[] a reasonable possibility that the named insured's acts and omissions . . . proximately caused the worker's injury." *Id.* at *4.

The "duty of an insurer to defend its insured is 'exceedingly broad,'" and if "the allegations of the complaint are even potentially within the language of the insurance policy, there is a duty to defend." *High Point Design, LLC*, 911 F.3d at 94, 95. In this case, the Complaint raises the reasonable possibility that Innovative, Sandstone, and/or Y&C proximately

caused the Accident. *See* Hudson AI Endorsement § 2. Accordingly, Hudson owes a duty to defend Kingsland in the Garzon Action.

For these same reasons, USIC, as it acknowledges, owes a duty to defend Kingsland in the Garzon Action. The Sandstone Contract required that Sandstone maintain commercial general liability insurance including Kingsland as an additional insured. JSMF ¶ 35; *see* ECF No. 72-11. And, like the Hudson Policy, the USIC Policy makes clear that it is primary to any additional insured's insurance when a claim "arises directly from work performed by [Sandstone] or others working directly on behalf of [Sandstone]." ECF No. 72-3 at USIC 000064; JSMF ¶ 13. USIC does not contest its duty to Kingsland. *See* USIC MSJ at 6.

Therefore, both Hudson and USIC owe a duty to defend Kingsland in the Garzon Action.

II.    **Hudson and USIC's Duties to Kingsland Are Primary and Non-Contributory, and Each Must Contribute Equally**

The Court must now determine which policy, if any, has priority. "The parties once again agree on the relevant legal principles." *Charter Oak Fire Ins. Co.*, 462 F. Supp. 3d at 327. In New York, "[w]here the same risk is covered by two or more policies, each of which was sold to provide the same level of coverage (as is the case here), priority of coverage (or, alternatively, allocation of coverage) among the policies is determined by comparison of their respective 'other insurance clauses.'" *Id.* (quoting *Sport Rock Int'l v. Am. Cas. Co.*, 878 N.Y.S.2d 339, 344 (1st Dep't 2009)).

The Hudson Policy is clear that when Innovative is "specifically required by a written contract to provide insurance that is primary and non-contributory and the written contract so requiring is executed by [Innovative] before any 'occurrence,'" Hudson will provide primary and non-contributory coverage. ECF No. 72-2 at HUD 0064; JSMF ¶ 6. Such is the case here: Innovative signed the Innovative Contract before Garzon's alleged injuries occurred. JSMF ¶ 32.

The USIC Policy, meanwhile, is clear that "[w]here required by written contract," its coverage is "primary to any insurance carried by an additional insured, and any insurance carried by such additional insured shall not be called upon to contribute to any claim covered under this policy." ECF No. 72-3 at USIC 000064; JSMF ¶ 13; *see* USIC MSJ at 6 ("'Carried by' means the insurance that Kingsland itself procured that names Kingsland as a named insured, not insurance that provides additional insured coverage to Kingsland." (internal citations omitted)) Again, such is the case here: Sandstone signed the Sandstone Contract before Garzon's alleged injuries occurred. JSMF ¶ 34.

Accordingly, the Hudson Policy and the USIC Policy are both primary over the Colony Policy. Now, where each of these policies is primary alongside another primary policy, both "will share with all that other insurance." JSMF ¶¶ 8, 14; ECF No. 72-2 at HUD 0021; ECF No. 72-3 at USIC 00016. And where each of these policies and another policy both "permit[] contribution by equal shares," as the Hudson Policy and the USIC Policy both do, each insurer agrees that it "will follow this method." JSMF ¶¶ 9, 15; ECF No. 72-2 at HUD 0022; ECF No. 72-3 at USIC 000017. Hudson and USIC must therefore contribute equal shares to Kingsland's defense.

The parties also broadly agree on this analysis. *See* USIC MSJ at 6 (arguing that Hudson and USIC must defend Kingsland on a primary basis and contribute equally); ECF No. 94 ("Hudson Reply-Colony") at 7 (agreeing that, if Hudson does owe a duty to defend Kingsland, it does so "on a co-insurance basis" with USIC).

Therefore, Hudson and USIC owe a primary and non-contributory duty to defend Kingsland in the Garzon Action, and must contribute equally to that defense.

### III.    USIC Owes a Primary and Non-Contributory Duty to Defend Innovative in the Garzon Action

USIC acknowledges that it owes a duty to defend Innovative in the Garzon Action on a primary and non-contributory basis. ECF No. 83 ("USIC Opp.") at 3. Accordingly, the Court grants that part of Hudson's motion for partial summary judgment. *See* ECF No. 79.

### IV.    The Court Need Not Reach USIC's and Hudson's Arguments About the Duty to Indemnify

The Court now turns to the duty to indemnify. USIC argues that, at this stage of the litigation, the Court cannot determine whether USIC owes a duty to indemnify Kingsland and/or Innovative. *See* USIC MSJ at 3–5. However, neither Colony nor Hudson ask the Court to make such a declaration. At this stage, Colony does not seek a declaratory judgment that USIC or Hudson owes a duty to indemnify Kingsland. Colony MSJ at 5 ("Colony does not seek judgment on those portions of its First and Third Causes of Action seeking a declaration that Hudson and USIC owe a duty to indemnify Kingsland . . . ."). And Hudson does not seek a declaratory judgment at this stage that USIC owes a duty to indemnify either Kingsland or Innovative. Hudson MSJ-USIC at 25 ("The issue of [USIC's] indemnity duty, if any, to Innovative and Kingsland is reserved for another day.").

Accordingly, the Court need not reach USIC's arguments about Colony's standing to seek a declaration as to USIC's duty to indemnify Kingsland, or USIC's arguments about justiciability. *See* USIC MSJ at 3–5. Similarly, the Court need not reach Hudson's passing arguments that it has no duty to indemnify Kingsland. *See* Hudson MSF-Colony at 15. As a result, those parts of USIC's and Hudson's motions that address the duty to indemnify are denied as premature. *See, e.g.*, *U.S. Fid. & Guar. Co. v. Fendi Adele S.R.L.*, 823 F.3d 146, 151 (2d Cir. 2016) (citing *Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79 (2d Cir. 2006)) (noting that

the Second Circuit "did not reach the issue of the insurer's duty to indemnify" in *Century 21*); *Zurich Am. Ins. Co. v. XL Ins. Am., Inc.*, 547 F. Supp. 3d 381, 394 (S.D.N.Y. 2021), *opinion corrected on reconsideration on different grounds*, 556 F. Supp. 3d 301 (S.D.N.Y. 2021) (reserving judgment "on the question of whether [an insurer] has a duty to indemnify until liability is established in the State Court Action").

## V.    The Court Directs the Parties to Meet and Confer About Costs

Finally, the parties advance various arguments about costs. Colony contends that Hudson and USIC must reimburse it "in full for the reasonable amounts it has spent and will spend to defend Kingsland in the Garzon Action." Colony MSJ at 12. Hudson argues that, if it "prevails," it is "further entitled to recover" post-tender defense costs from USIC. Hudson MSJ-USIC at 25. And USIC represents that it has already agreed "to reimburse the reasonable past defense costs incurred by Hudson to defend Innovative from the date of first tender," but argues that Hudson must split any Kingsland defense costs equally. USIC Opp. at 3, 8.

The parties are directed to meet and confer to see if they can reach an agreement as to costs consistent with this Opinion. If they are unable to reach an agreement, they are directed to submit a joint letter, no later than **April 16, 2026**, advising the Court why they were unable to reach an agreement. At that time, the Court may then refer the parties to Judge Ricardo for an inquest. 28 U.S.C. § 636(b)(1); *see also Arch Specialty Ins. Co. v. Farm Fam. Cas. Ins. Co.*, 238 F. Supp. 3d 604, 616 (S.D.N.Y. 2017). The parties may also request a referral to Judge Ricardo for a settlement conference, or to the Court-Annexed Mediation Program.

## CONCLUSION

For the foregoing reasons, Colony's motion for partial summary judgment is GRANTED in part and DENIED in part. *See* ECF No. 68. The Court finds that Hudson and USIC owe a

primary and non-contributory duty to defend Kingsland in the Garzon Action, but directs the parties to meet and confer regarding costs.

Hudson's first motion for summary judgment is also GRANTED in part and DENIED in part. *See* ECF No. 70. The Court concludes that Hudson has a duty to defend Kingsland in the Garzon Action, but that the Court need not reach the question of whether Hudson has a duty to indemnify Kingsland in that Action. The Court also holds that Hudson and USIC must contribute equal shares to their Kingsland defense.

Hudson's second motion, for partial summary judgment against USIC, is likewise GRANTED in part and DENIED in part. *See* ECF No. 79. As above, the Court finds that both Hudson and USIC owe a duty to defend Kingsland in the Garzon Action, and that each must contribute equally to that defense. The Court also concludes that USIC owes a primary and non-contributory duty to defend Innovative. However, the Court directs the parties to meet and confer as to Hudson's request for costs from USIC.

Finally, USIC's motion for summary judgment is GRANTED in part and DENIED in part. *See* ECF No. 74. Again, the Court concludes that USIC and Hudson have a co-equal duty to defend Kingsland in the Garzon Action. But the Court denies USIC's duty-to-indemnify arguments as moot.

The Clerk of Court is respectfully directed to terminate ECF Nos. 68, 70, 71, 74, 79, and 80.

Dated:  March 26, 2026
        White Plains, New York

SO ORDERED.

_____
JESSICA G. L. CLARKE
United States District Judge

23